Good morning, Your Honors. Martin Guajardo appearing on behalf of Armando Ortega-Rodriguez. We asked the court to find that the 98 removal of Mr. Ortega, the court find it was unlawful. I think what is telling about these proceedings is that the administrative record does not contain a transcript. And the administrative record, albeit contains a record of sworn statement, I believe on form I-687, indicates that the interview was conducted in the Spanish language. And what's interesting is that there is nothing in that statement, in that three-page statement, that is in Spanish. The only manner in which we have to be able to tell what occurred and what we consider to be the due process violation in this case is by having an adequate record. I think that when we raise the question of the due process violation in these cases, it's the continuing violation. In this instance- Castle, let me just ask you this. Let's assume for the sake of this question that you're correct, that there wasn't all the process that there should have been. Where is the prejudice to your client? What kind of relief would he be entitled to in view of his conviction for domestic violence? I think that the question can be answered in two parts. If the question is posed, what relief would have been available in 1998, I think at that point the domestic violence under California Penal Code 273.5, now viewed by the IRA under 237A2EI, would not, at that point, have been a bar because it would have then come within the petty offense exception. So that- Within the what exception? I didn't hear you. Within the petty offense exception. My understanding is that we have a, the 273.5, the initial, the first one, Mr. Ortega was sentenced to two days. And it was disposed of as a misdemeanor with a requisite follow-up as far as anger management, etc. So that the, to answer the question, in 1998, we believe that under IRA 240AB, that Mr. Ortega certainly would have had an opportunity once before an immigration judge to be able to submit his application, E42B, to make that application and indicate, I've been in the United States, I've been here for more than 10 years, and I have qualifying relatives, and I have the requisite extreme hardship. To answer the question today, what prejudice results, I think that, if you will, that we would have to look at both of those convictions and determine whether now, as we stand here today, whether the 237A2EI now would constitute a crime of moral turpitude under the facts of the case and the judgment that was issued from the court in San Mateo County. That- Let me just follow up your earlier answer with one additional question. You're saying that if, in 1998, he had been given more procedure, he could have received some relief back then and wouldn't have needed to get relief now. But what, did he have any opportunity to challenge the procedure then, or can he wait around and challenge it now? Do you understand my question? Would he have- The failure of the agency to issue a charging document that would have permitted him to make the application stripped him, if you will, of both the administrative and judicial remedies that he would have had, albeit the relief he was seeking, would have been denied. The expedited removal, essentially, if we look at the administrative record, we find the record of sworn statement, that form I-687, I believe it is, and it's on page, if I may just take a moment. The short answer is that he, as I understand it, is that he simply had no opportunity at that earlier time to challenge this. That's absolutely- So the answer to Judge Graber's question is because he couldn't have challenged it then. By the mere nature of the proceedings. The 235 proceedings were such that it was an expedited proceeding. I don't know that we can go beyond that. We know that that today, we can't go back and review the 98, how that 98 came about, the 98 expedited removal came about. And from- You're essentially asking us to do that, are you not? We are, but there is no- The agency does not provide a procedural remedy other than the challenge that we bring to the Court today in saying that this was an unlawful order. There is no appeal that would lie after he's been removed in order to pursue that remedy. So there was no remedy. That is our position. And there was no right to counsel at that time? I think that the statement, the sworn statement, the litany that the officer reads to the alien is telling because nowhere in that, if you will, the introduction is he told you have a right to seek out an attorney even if it's at your own expense. Which I will explain to you, you are not entitled to a hearing or a review, and then he explains what you're entitled to. Yes. Which does not include counsel, does not include the right to introduce evidence. That is correct. And I think that these cases are significantly different, if you will, from those cases where an individual has had an opportunity to proceed by way of a notice to appear previously by way of an order to show cause. In the previous proceeding. Yes. Like an alvarongo. Yes. That's correct. But are you, so is your basic claim that, and putting aside the prejudice question, which I do want to get back to, that at this juncture, i.e. when he's back in the country, albeit illegally, he has the opportunity to collaterally attack the original proceeding? Or are we really proceeding in this proceeding now and saying that now, because he's in the country and has constitutional due process rights, which he didn't previously, there has to be a process provided for him with regard to anything he's claiming now? I think it's a practical matter that the agency has the wherewithal to issue a notice to appear today. They can issue a notice to appear and bring him back into the fold, if you will, so that he presents his case. Not with the law. But present his case as to what? As to the other. He can't challenge the underlying. I mean, he could say I wasn't the guy. You know, the guy that you exported the last time had the same name, but, you know, it wasn't me. It was somebody else. That I can see challenging, but he can't today challenge the underlying. If this court we have to, you know, he gets due process, but we have to take as a given the earlier removal order, can't we go that way? I believe that if this court were to find that the 1998 expedited removal was unlawful, then the 240. So this is the problem. Are you arguing that it was unlawful for the purpose for which it was used, i.e., to remove him from the country then when he was at the border? And presumably under established constitutional doctrine, didn't have much in the way of due process rights? Or are you claiming that it's invalid now as a — because now, having been in the country, he does have due process rights for the purpose of undergirding a second removal? I think we've argued both in our brief. And I think that under the — But they're both very difficult to sustain. But if you look at the 241A5 reinstatement today, he should have an opportunity to be able to review, to present his applications if he would have presented, but for his expedited removal. But so then we're back to Judge Kramer's question, which is what difference is this all going to make if he — at this — he then came back a second time, presumably illegally, and he has no present — or doesn't appear to have any present eligibility for cancellation of removal? I think Government Counsel concedes in their brief that the question of whether the remedy might not be available to him in the exercise of discretion leaves the question open as to whether statutory eligibility. As to now? As to now. In other words, he might in the exercise of discretion have — despite his second conviction. That would have to be explored. That would have to be — That's good and well, but we have to take the first one as a given. You can't — I don't see — I mean, you want to say, look, we accept the first one, we can't challenge it, but we now that we have due process rights, we maybe thought it was some exercise of discretion. That I understand, but you pretty much have to accept — I don't see how you get past the fact of the early — of the early removal, unless, is this to say, you got the wrong guy. You know, same name, but it wasn't me, and I don't hear you say — making that claim. That — I mean, I'm not trying to put words in your mouth, but I don't think you're saying they got the wrong — you pretty much concede that it was your client who was — removed at the border the last time. And aren't you, when it all is said and done, aren't you stuck with that fact? I think we — Whatever due process rights you have start with that as a given? I think that concession — that stance, I think that it stands to — I mean — But I think that what we are looking at is the use of — I don't know if I'm just repeating myself now, but if we will permit the use of the 98 expedited removal for the 241 — I guess I'm not sure I understand the difference between saying it stands and saying you can't use it. If you're saying it stands, but the IRS can't use it, you know, you have to sort of ignore it. To me, it sounds like what you're saying is it doesn't stand. I don't see how you get around it. If, in fact, your client was subject to this order, how do we ignore it? That's, I think, the question that we're all grappling with now. You know, I — It doesn't seem like a very hard question. I guess when you say grappling, it suggests some difficulty. I think from our vantage point, what we see is we see an unlawful order being issued because of the apparent eligibility of Mr. Ortega when he first — What is the impact of the prior order now? One — as I see it, there are possibly two, perhaps. One is simply that the reinstatement procedure, as it now exists under the statute, allows the INS to remove him a second time with these very truncated procedures. But there's some — there is some procedure now, but it doesn't allow you to go into the question of whether you're actually illegally here now, right? That's one — but is there also a second impact, which is that the fact of him having been removed earlier impacts on his ability now to apply for discretionary relief? Is that — absolutely, Your Honor. So as to the question, if we were to think, one, that he is entitled to due process now,  and again, putting aside the problem that it appears that he may not at all be eligible, then there is a residual impact from the prior order, which is going to affect that ability now to apply for relief. And as I understand what you're saying is he has to be able to go behind that prior order to that degree. That is correct. We'll hear from the Governor. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Papu Sandhu on behalf of the Respondent. Your Honors, we ask the Court to affirm the reinstatement order in this case. I think this case is fairly simple. Petitioner has attempted to enter or enter the country illegally several times beginning in 1988 when he reentered illegally for the first time. He does not claim any legal status in this country at any point during his time since his first illegal reentry. He was properly removed under the expedited removal procedures in 1988 — in 1998, which this Court has upheld in the case of Lee v. Eddy. And then he was properly removed — or, I'm sorry, he was properly reinstated in 1999. As this Court's questions have indicated, there's nothing that the Petitioner can point to as sort of a threshold issue that he can show prejudice about. He's not eligible for any relief. And it's very clear, and he does not dispute in his brief, that he was — he's not lawfully in the United States and he was properly removed. He presented a fraudulent document in his attempt to get into the country in 1998, and there's no question. Well, suppose, though — let's take the situation of the Petitioner in Lee v. Eddy, who maintains that she didn't, in fact, present a fraudulent document, that that wasn't true. And let's suppose that she had come back into the country and was in Mr. Ortega's situation. As I understand your position, you would say that she — even if she were otherwise eligible now for some form of discretionary relief, she would not be eligible to apply for it because of her earlier removal, which lacked any process at all. Well, Your Honor, the earlier removal under the expedited proceedings, there's a — there's a statutory scheme that Congress has set up to — Again, I'm asking a due process constitutional question. I mean, see, the key to — the key to the constitutional problem here is that at the border, people, in fact, have little or no in the way of due process rights. And when they come back in — and Zavados was quite clear about this — illegally or illegally, once they're here, their whole constitutional status changes in terms of their right to due process before they're removed again. So my question is, let's take the Lee situation where there was a dispute at the border about whether she was, in fact, fraudulently entering. That decision — and if she were now here and did have a right to due process with regard to a second removal, your position is that she never gets, even then, and even if she were otherwise eligible for some form of discretionary relief, to go into that earlier situation? Well, I'm not sure I understand the question. She gets into the country, okay. So then you're asking about due process in reinstatement or — I'm asking about due process in reinstatement, but whether the due process in reinstatement includes in any way an ability to have some process with regard to an underlying fact that's being assumed that is influencing her ability to get relief now? I think the reinstatement bar, though — one of the reasons that Congress has enacted it is that there is sufficient procedures in the previous proceedings. So that in these proceedings — But that's what there isn't. In other words, in Alvarongo, for example, the assumption in Alvarongo was that there was one full and fair hearing, including the right to judicial review at that hearing. And that was true in Alvarongo, but it's not true here. Let me say this. The statute provides for limited habeas relief in those expedited proceedings. As Judge Kuczynski said, if the person says, that ain't me, or if the person says, I'm an LPR, I'm unlawful, or if they say I'm an asylee applicant, they can go into district court under the habeas relief statute. And you're talking about now at the border. That's right. And so there is that process available. In addition — But there's no process available under Lee and the INS's position if the woman says, this is not a fraudulent document. You're wrong. Yeah, that was the issue in Lee, Your Honor. It's not the issue right here. And that's correct. I'm trying to understand the system. And if they were excluded, if Lee was excluded and came back in illegally, and her order was reinstated, yes, the INS would argue that, you know, that reinstatement was proper, and she can't look to collaterally attack the old order, because Congress has set forth in the expedited removal scheme — And he did not, in fact, have any right the first time to any — to a lawyer, to present evidence, to have judicial review. Those three things at least are correct? There's no right to a lawyer in expedited proceedings. And he can present evidence of certain things. Again, if he's claiming to be an LPR, if he's claiming to be a citizen, if he's claiming to be an asylee, he can — And what about that this isn't a fraudulent document? This is a fraudulent document. This is not a fraudulent document. That this is not a fraudulent document? Yes. Suppose he — The only thing under the statute is whether or not he's being removed under a permissible ground under the expedited removal statute. So it wouldn't go into the merits of the fraudulent issue. But that issue is not here. I would urge this Court to look at that. There's no prejudice here. He's not even eligible for cancellation and removal. Well, there may be no prejudice in this case. I'm trying to understand the overall system. Right. But we would — You know, Your Honor, there's two statutory bars to jurisdiction here over the prior order. I mean, the Court has to get past 1231A-5, which is the bar against review of the prior order, which this Court has in Algoranga applied, and in a different context, but it's applied it there. And then 1252E sets forth a very limited statutory scheme. And there's no review of the prior order except as per the things that I mentioned, those individual claims. Again, they can seek to challenge — If they're claiming they're a citizen, they can seek to challenge in those proceedings. If they're an LPR, they can seek to challenge in those proceedings on these other issues. And, of course, this Court has decided the issue, Your Honor, that you're referring to in Levietti. We would also — But it appears also to have decided or certainly to have assumed and largely to have decided in Algoranga that if there was no full and fair hearing the first time, there has to be a full and fair hearing the second time with regard to — not necessarily with regard to the earlier proceeding, but with regard to the circumstances at the time of the reinstatement. I'm not sure. I mean, the Court did seem to hinge its holding on the fact that the LN did have an opportunity to be heard previously. I don't think this case, though, presents a different situation for the reasons that I've set out. But what are the reasons? Well, because there's nothing here that he's arguing that he couldn't have presented in his prior proceedings that would have made a difference in his case in terms of his status. So you're arguing prejudice, basically. I'm arguing prejudice. That's right, Your Honor. But I'm also arguing that these reinstatement procedures are constitutional as applied. He has two convictions. I think three, Your Honor, actually. Three. Okay. Let's leave out the pre-'98 one. Post-'98, there was one. I believe it's the '99. Right. So there's one post-the first. And is there – if there wasn't a reinstatement – if this wasn't a reinstatement proceeding, he would get a full process with regard to whether that – within the agency, although not necessarily judicial review, as to whether that was, in fact, a conviction for a crime of moral interpretation. He would – well, if he was to be placed in immigration proceedings, he's clearly removable. I mean, I don't think there's any dispute. The issue would be, as he claims, is that would he be eligible for cancellation removal. And as we've pointed out in our briefs, he's got two crimes. He doesn't fall within the petty exception, which is what he relies on. The statute very clearly says it's only for one offense. In fact, there's a question about the issue of whether he's even eligible because he has 10 years in the United States. He admits in his sworn statement that he entered the country in 1988 illegally. So I'm not – there's a question about whether he has 10 years. So on a couple of grounds. Furthermore, cancellation removal is given in the – sort of the broad exercise of discretion of the attorney general. And he has attempted to present a fraudulent document. He's entered the country or attempted to enter the country illegally three times. And he's got three crimes. So there's a real problem here with prejudice. And it seems to me that he's statutorily ineligible anyway, that we don't even have to go to the exercise of discretion. So that's an issue that really I don't think there should be. But usually we only decide that after hearing a hearing. And you're now suggesting that we decide it without there having been any hearing in the agency concerning any of this. There – I'm not understanding about what you're saying about a hearing. There was a reinstatement. But the reinstatement proceeding didn't consider this, right? Right. Okay. So that's what I'm saying. I'm saying that there was no hearing on this. That's what I said. That's true. But the reinstatement procedures don't require a hearing. And we think that those are constitutional as applied in this situation. But if the court – you know, the court doesn't have to reach that issue necessarily because there's no prejudice. But there's no – there's no constitutional problem with applying this – these reinstatement procedures to reinstate an expedited removal order in these circumstances. That would be our first argument. And then secondly, there's clear that there's no prejudice in this case either. We ask that the court affirm the reinstatement order. Okay. Thank you. Here's your slide. You will stand submitted.
judges: Kozinski, Graber, Berzon